CASE NO. 25-40396

# United States Court of Appeals
### *for the*
# Fifth Circuit

VICKI BAKER,

*Plaintiff-Appellee,*

– v. –

CITY OF MCKINNEY, TEXAS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS, SHERMAN, IN CASE NO. 4:21-CV-0176
HONORABLE AMOS L. MAZZANT, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLEE

SURANJAN M. SEN
JEFFREY H. REDFERN
ROBERT MCNAMARA
WILLIAM R. ARONIN
*Attorneys for Plaintiff-Appellee*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320
ssen@ij.org
jredfern@ij.org
rmcnamara@ij.org
waronin@ij.org

## CERTIFICATE OF INTERESTED PERSONS

Appellee certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.  <u>Plaintiff-Appellee</u>

    Vicki Baker

2.  <u>Counsel for Plaintiff-Appellee</u>

    Suranjan M. Sen
    Jeffrey H. Redfern
    William R. Aronin
    Robert McNamara

    INSTITUTE FOR JUSTICE
    901 North Glebe Road, Suite 900
    Arlington, VA 22203

3.  <u>Defendant-Appellant</u>

    City of McKinney, Texas

4.  <u>Trial and Appellate Counsel for Defendant-Appellant</u>

    Edwin Armstrong Price Voss, Jr.
    BROWN & HOFMEISTER, L.L.P.
    740 East Campbell Road, Suite 800
    Richardson, TX 75081

<u>Trial Counsel for Defendant-Appellant</u>
Michael L. Martin
BROWN & HOFMEISTER, L.L.P.
740 E. Campbell Road, Suite 800
Richardson, TX 75081

5.    <u>Amicus Curiae</u>

International Municipal Lawyers Association, Texas Municipal League, and Texas City Attorneys Association

Dated:  October 17, 2025.

/s/ Suranjan M. Sen

*Attorney for Plaintiff-Appellee*

Appellee Vicki Baker is an innocent homeowner whose house was destroyed by a SWAT team attempting to apprehend a dangerous fugitive. She sought compensation under both the U.S. Constitution and the Texas Constitution. The last time this case was before the Fifth Circuit, it presented "a serious question: whether the [federal] Takings Clause permits the government to destroy private property without paying just compensation, as long as the government had no choice but to do so." *Baker v. City of McKinney*, 145 S. Ct. 11, 13 (2024) (Sotomayor, J., joined by Gorsuch, J., respecting denial of certiorari). In this appeal regarding Ms. Baker's state claim, however, the questions are easier. The Texas Supreme Court has already held that, under the Texas Constitution, people like Ms. Baker are entitled to compensation. The district court correctly applied that clear precedent to grant Ms. Baker relief. The City offers no basis to disturb that judgment.

## STATEMENT REGARDING ORAL ARGUMENT

Ms. Baker agrees that oral argument would be helpful in this case and requests it accordingly.

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS .................................................................... iv

TABLE OF AUTHORITIES ................................................................ vi

ISSUES PRESENTED FOR REVIEW .................................................... 1

STATEMENT OF FACTS ...................................................................... 2

SUMMARY OF THE ARGUMENT .......................................................... 8

STANDARD OF REVIEW ................................................................... 11

ARGUMENT ..................................................................................... 12

I. The district court did not abuse its discretion by retaining jurisdiction of this case. ....................................................... 12

II. The district court correctly granted Ms. Baker summary judgment as to liability under the Texas Constitution. ........ 17

    A. *Steele* controls. ............................................................. 17

    B. *Steele* remains good law. .............................................. 23

III. The district court did not plainly err by instructing the jury to quantify damages based on costs of repairing Ms. Baker's home. ................................................................................. 26

IV. The jury's verdict was supported by the evidence. ............... 28

CONCLUSION .................................................................................. 31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Rice, Inc. v. Prods. Rice Mill, Inc.*,
  518 F.3d 321 (5th Cir. 2008) .............................................................. 11

*Baker v. City of McKinney*,
  No. 4:21-CV-176, 2025 WL 1592949 (E.D. Tex. June 5, 2025) .......... 14

*Baker v. City of McKinney*,
  145 S. Ct. 11 (2024) .......................................................................... iii

*Baker v. City of McKinney*,
  93 F.4th 251 (5th Cir. 2024) ................................................................ 7

*Baker v. City of McKinney*,
  84 F.4th 378 (5th Cir. 2023) ................................... 7, 8, 13, 14, 22, 23

*Baker v. City of McKinney*,
  624 F. Supp. 3d 653 (E.D. Tex. 2022) ............................................... 29

*Barshop v. City of Houston*,
  442 S.W.2d 682 (Tex. 1969) .............................................................. 27

*Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*,
  554 F.3d 595 (5th Cir. 2009) ...................................................... 14, 15

*Carpenter v. Parmer Cnty.*,
  51 S.W.2d 829 (Tex. Civ. App. 1932) ................................................ 20

*City of Carrollton v. RIHR Inc.*,
  308 S.W.3d 444 (Tex. 2010) .............................................................. 27

*City of Dallas v. Stewart*,
361 S.W.3d 562 (Tex. 2011) ..............................................................25

*Commons of Lake Houston, Ltd. v. City of Houston*,
711 S.W.3d 666 (Tex. 2025) ..............................................................21

*Daniels Towing Serv., Inv. v. Nat Harrison Assocs., Inc.*,
432 F.2d 103 (5th Cir. 1970)..............................................................30

*Enochs v. Lampasas Cnty.*,
641 F.3d 155 (5th Cir. 2011)..............................................................15

*Excel Modular Scaffold & Leasing Co. v. OSHA*,
943 F.3d 748 (5th Cir. 2019)..............................................................22

*First United Pentecostal Church v. Church Mut. Ins. Co.*,
119 F.4th 417 (5th Cir. 2024) ............................................................19

*Hallco Tex, Inc. v. McMullen Cnty.*,
221 S.W.3d 50 (Tex. 2006) ................................................................24

*LaCombe v. A-T-O, Inc.*,
679 F.2d 431 (5th Cir. 1982)..............................................................29

*Malvino v. Delluniversita*,
840 F.3d 223 (5th Cir. 2016)............................................. 7, 12, 13, 16

*Mendoza v. Murphy*,
532 F.3d 342 (5th Cir. 2008)...................................................... 11, 16

*Myers v. County of Lake*,
30 F.3d 847 (7th Cir. 1994)................................................................15

*Palacios Seafood, Inc. v. Piling, Inc.*,
888 F.2d 1509 (5th Cir. 1989)............................................................24

*Steele v. City of Houston*,

603 S.W.2d 786 (Tex. 1980) ...................8, 17, 18, 19, 21, 22, 23, 24, 25

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931) ................................................................. 29, 30

*Streber v. Hunter*,
    221 F.3d 701 (5th Cir. 2000) ................................................................. 12

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am. Inc.*,
    No. 4:08-CV-00451, 2020 WL 1495230
    (E.D. Tex. Mar. 27, 2020) ............................................................. 7, 13

*Tex. Dep't of Transp. v. Self*,
    690 S.W.3d 12 (Tex. 2024) ......................................................... 24, 25

*TrinCo Inv. Co v. United States*,
    722 F.3d 1375 (Fed. Cir. 2013) ............................................................. 21

*United States v. Capistrano*,
    74 F.4th 756 (5th Cir. 2023) ........................................................ 11, 27

*Williams v. Manitowoc Cranes, L.L.C.*,
    898 F.3d 607 (5th Cir. 2018) ................................................................. 28

CONSTITUTIONAL PROVISIONS

TEX. CONST. art. I, § 17................................................................. 17, 18

STATUTES

28 U.S.C. § 1367(c)(1) ................................................................. 16

28 U.S.C. § 1367(c)(3) ................................................................. 15

42 U.S.C. § 1983 ................................................................. 5

## ISSUES PRESENTED FOR REVIEW

The issues presented for appeal are as follows:

(1) Appellee Vicki Baker prevailed below after trial on both federal and state law claims. Following Fifth Circuit precedent, she was required to choose a single claim under which to recover. She elected to recover under her federal claim, Appellant City of McKinney appealed, and a panel of this Court vacated the federal judgment and remanded. The trial court then re-entered judgment under Baker's state law claim. Did the district court abuse its discretion by retaining supplemental jurisdiction for purposes of granting Ms. Baker's reelection of remedy?

(2) The City's officers intentionally damaged Ms. Baker's home for purposes of apprehending a third-party fugitive who had barricaded himself inside. Did the district court err by finding that the Texas Constitution, as interpreted by the Supreme Court of Texas, requires the City to pay Ms. Baker just compensation?

(3) The district court instructed the jury to calculate Ms. Baker's damages for the destruction of her home by considering the cost of

repairs. The City did not object to this instruction. Was the instruction plain error?

(4) The district court instructed the jury to calculate Ms. Baker's damages for the destruction of her personal property by considering the fair market value of the property—most of which consisted of common household goods. Was Ms. Baker's uncontradicted personal testimony about her lost property a sufficient evidentiary basis for the jury to award damages?

## STATEMENT OF FACTS[1]

On July 25, 2020, officers from the McKinney Police Department sought to apprehend Wesley Little, who was wanted in relation to a runaway 15-year-old girl (as well as other suspected crimes). Officers spotted Mr. Little (with the girl) driving a Corvette, whereupon they began a high-speed pursuit, but Mr. Little was able to evade capture. ROA.25-40396.1357–58.

---

[1] Ms. Baker provides record citations sparingly, given that there is no material dispute between the parties regarding the factual narrative that gave rise to this lawsuit.

2

That same morning, Appellee Vicki Baker's adult daughter read on the internet that police were seeking Mr. Little. She recognized Mr. Little as the handyman whom her mother had briefly employed a year earlier to do some odd jobs around her house. In the intervening year, no one from the family saw or heard of Mr. Little—until news broke of Mr. Little's flight from police. ROA.25-40396.1277–78.

After evading the City's police, Mr. Little drove to Ms. Baker's house, where Ms. Baker's daughter was temporarily staying. Ms. Baker's daughter recognized him (and the girl as the missing runaway) and saw that he was armed. Though frightened, she pretended not to know that Mr. Little was wanted by the police. She allowed him entry, then left, saying she needed to go to the supermarket. ROA.25-40396.1277–79.

Immediately thereafter, Ms. Baker received a phone call from her daughter, and the women agreed to tell the police that the man they sought was at the house. At that time, less than one hour had transpired since Mr. Little had successfully evaded the City's police in his Corvette. ROA.25-40396.1279.

3

The City's police quickly arrived at Ms. Baker's house and set up a perimeter. After a while, the 15-year-old girl escaped the house from the front entrance, leaving Mr. Little alone inside. Officers learned from the girl that Mr. Little was willing to die in a shootout rather than return to prison. City Br. 9–10.

Hours after the hostage was safely in police custody, the City's officers planned and executed an assault on the house to apprehend Mr. Little. They placed explosives on the garage door. They utilized a sort of grenade launcher to fire "a multitude of rounds" of canisters into the house, breaking every window and tearing through the walls and roof. ROA.25-40396.1235–39. Those canisters, as designed, filled the house with toxic gas—saturating it, with the goal of denying any possible hiding spot to Mr. Little and forcing him to surrender. *Ibid.* Afterward, the officers sent in a drone, which revealed that Mr. Little had shot himself, taking his own life. ROA.25-40396.1242.

Thus, the officers got their man and, fortunately, no innocent person was hurt. But for Ms. Baker, the nightmare was far from over. In anticipation of retiring to Montana, Ms. Baker had placed her house

4

on the real estate market a couple of days before the assault. Following the assault on her home, as she explained to the jury, the house was utterly uninhabitable, and nearly everything in it was destroyed. *See* ROA.25-40396.1283.

The City's police officers gave Ms. Baker the contact card of the City's risk manager for purposes of receiving compensation. However, the City refused to help Ms. Baker. At the same time, Ms. Baker's homeowner's insurance informed her that they, too, would not be compensating her beyond the blood cleanup from Mr. Little's suicide— given that her policy, as is common, did not cover acts of government. *See* ROA.25-40396.1281–82.

Ms. Baker did (and does) not criticize the police's handling of the situation. But the costs of that public service are costs that, in all fairness and justice, should be borne by the public—not a single retiree.

Accordingly, Ms. Baker filed this lawsuit against the City, alleging that it had failed to compensate her for the taking of her property, in violation of the United States Constitution, 42 U.S.C. § 1983, and the Texas Constitution. Ms. Baker then moved for partial summary

judgment, arguing that the undisputed material facts established the City's liability under both the United States and Texas Constitutions. The District Court agreed and granted Ms. Baker's motion.

The parties set dates for trial to resolve questions of the City's Section 1983 liability, as well as the quantum of damages owed to Ms. Baker under all her claims.[2] Ms. Baker requested a jury instruction asking for the damages to her home to be quantified by the cost of repairs; the City did not object to that instruction, nor did the City request a conflicting instruction. *Compare* ROA.25-40396.807 (court's jury instructions), *with* ROA.25-40396.1423 (City's objections to those instructions), *and* ROA.25-40396.544 (City's proffered jury instructions)

A jury determined that the City's failure to compensate Ms. Baker was under color of state law (for purposes of Ms. Baker's Section 1983

---

[2] At times, the City appears to imply that the jury trial concerned only Ms. Baker's federal claim. *See, e.g.*, City Br. 5 ("[T]rial resulted in a jury verdict on Baker's federal takings claim."). That is incorrect. The jury's verdict determined compensation for both the state and federal claims. *See* ROA.25-40396.803 (jury instruction) ("For Ms. Baker's claim under the Texas Constitution, you will [] be asked to determine the amount necessary to compensate Ms. Baker for the City's unlawful taking of her property.").

claim), and it calculated the damages owed to Ms. Baker for all her claims at $59,656.59. The City filed motions for judgment as a matter of law and for a new trial, which the district court denied. Pursuant to Texas law regarding election of remedies (which this Circuit follows),[3] Ms. Baker elected to use Section 1983 as her choice of remedy following trial. *See* City Br. 8.

In reviewing Ms. Baker's federal claim, this Circuit disagreed with the City's only substantive argument: that exercises of the "police power" are categorically immune to a Fifth Amendment takings analysis. *Baker v. City of McKinney*, 84 F.4th 378, 384 (5th Cir. 2023). However, the panel *sua sponte* determined that the Fifth Amendment allows the government to take private property—without providing any compensation—in a "public emergency," and that apprehending an armed, barricaded fugitive qualifies as such an emergency. *Id.* at 386. *See also Baker v. City of McKinney*, 93 F.4th 251, 251 (5th Cir. 2024) (Elrod and Oldham, JJ., dissental). Therefore, the panel reversed the

---

[3] *See Malvino v. Delluniversita*, 840 F.3d 223, 233 (5th Cir. 2016); *see also Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am. Inc.*, No. 4:08-CV-00451, 2020 WL 1495230, at *3 (E.D. Tex. Mar. 27, 2020).

district court's finding of federal liability and vacated Ms. Baker's Section 1983 judgment—without "reach[ing] whether she succeeds under the Texas Constitution." *Baker*, 84 F.4th at 388–89.

On remand, Ms. Baker sought to reelect the Texas Constitution as her choice of remedy. ROA.25-40396.966–67. The City opposed, and it also filed a motion to dismiss Ms. Baker's case for lack of supplemental jurisdiction. ROA.25-40396.979–94. The district court ruled in Ms. Baker's favor on both counts, ROA.25-40396.1050–63, and the City timely appealed.

## SUMMARY OF THE ARGUMENT

Attempting to capture an armed fugitive, the City's police officers severely damaged Ms. Baker's home and destroyed her personal items. In *Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980), the Texas Supreme Court addressed precisely this situation. It held that the Texas Constitution's takings provision demands that the government provide just compensation to the innocent homeowner. Therefore— notwithstanding the previous panel's rejection of Ms. Baker's federal claim—her state claim must succeed.

On appeal, the City attempts to avoid liability under *Steele* by raising four arguments. All are meritless. First, the City asserts that the district court abused its discretion by retaining supplemental jurisdiction to allow Ms. Baker to reelect her choice of remedy (to her state claim) after this Court vacated her original election (her Section 1983 claim). However, this Court has expressly held that claimants may reelect their remedy under these circumstances, and declining to exercise supplemental jurisdiction at this stage of litigation—after a jury verdict and four years of litigation—would have been a reversible abuse of discretion.

Second, the City contends that the district court erred by holding the City liable under *Steele* because, somehow, this Circuit's rejection of Ms. Baker's federal claim undermines *Steele*'s applicability to her state claim. That's wrong; indeed, the prior panel expressly declined to offer any opinion about the Texas Constitution. *Steele* controls this case, and the Texas Supreme Court has recently cited *Steele* approvingly even while recognizing the previous panel's rejection of Ms. Baker's federal claim. In any event, decisions from this Circuit cannot change Texas law.

9

Third, the City suggests that the district court erred by instructing the jury to calculate Ms. Baker's damages (for both her federal and state claims) as the cost of repairing her home. According to the City, the district court should have issued a separate instruction for Ms. Baker's state claim, stating that damages should reflect diminution of market value. However, the City never requested such an instruction—leaving this Court to review for plain error. The district court did not err at all, much less plainly. And regardless, the City cannot articulate how evidence of repair costs is not evidence of diminution of market value, which necessarily includes costs of repairing the property to its previous state.

Finally, the City objects that Ms. Baker's testimony about the value of her destroyed personal property was insufficient to support *any* damages. But Texas law allows the owner of property to testify as to its value, and the City offered no evidence to challenge her testimony. The district court properly concluded that the jury's verdict was supported by the evidence.

## STANDARD OF REVIEW

(1) The district court retained supplemental jurisdiction of this case for purposes of granting Ms. Baker's reelection of remedy. The standard of review for that decision is for abuse of discretion. *See Mendoza v. Murphy*, <u>532 F.3d 342, 346</u> (5th Cir. 2008).

(2) The district court granted Ms. Baker's motion for partial summary judgment, finding the City liable under the Texas Constitution. The standard of review for that decision is *de novo. See Am. Rice, Inc. v. Prods. Rice Mill, Inc.*, <u>518 F.3d 321, 335</u> (5th Cir. 2008).

(3) The district court instructed the jury that the proper measure of compensation for the damage to her home is the cost of repair. Because the City failed to object to that instruction below, the standard of review for that decision is plain error. *See United States v. Capistrano*, <u>74 F.4th 756, 769</u> (5th Cir. 2023).

(4) Ms. Baker offered uncontradicted testimony about the value of her destroyed personal property, and the jury awarded damages on that basis. The district court denied the City's motion for a new trial, finding

11

that the evidence was sufficient to support the jury's damages verdict. This decision must be upheld "unless, considering the evidence in the light most favorable to [Ms. Baker] . . . reasonable jurors could not have arrived at [the] verdict." *Streber v. Hunter*, 221 F.3d 701, 721 (5th Cir. 2000).

## ARGUMENT

**I.   The district court did not abuse its discretion by retaining jurisdiction of this case.**

The City asserts that the district court abused its discretion by retaining supplemental jurisdiction to allow Ms. Baker to reelect her (state) remedy after this Circuit reversed her originally elected (federal) remedy. City Br. 17–23. In this section, Ms. Baker outlines the law governing reelection of remedies, and she explains that the district court did not err by allowing her to reelect her remedy.

The Texas "one satisfaction" rule is unusual. Under Texas law, which federal courts apply, a party who prevails on multiple claims for the same injury must "elect between the alternative claims for purposes of recovery." *Malvino v. Delluniversita*, 840 F.3d 223, 233 (5th Cir. 2016). Should the losing party appeal, the appeal is limited to the

elected claim—as the previous panel in this case expressly recognized. *Baker v. City of McKinney*, 84 F.4th 378, 388 (5th Cir. 2023) ("Because Baker opted to pursue relief under § 1983, we do not reach whether she succeeds under the Texas Constitution.").

A plaintiff may "change his election if the claim he elected to recover on is reversed on appeal." *Malvino*, 840 F.3d at 233; *accord Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am. Inc.*, No. 4:08-CV-00451, 2020 WL 1495230, at *8 (E.D. Tex. Mar. 27, 2020) ("It is equitable that TAOS be allowed to re-elect when the remedy it was entitled to was 'wiped from the book' on appeal."). After all, the purpose of Texas's election-of-remedies rule is "to prevent a plaintiff from recovering twice for the same wrong, not to prevent a plaintiff from recovering once." *Malvino*, 840 F.3d at 234. The district court did not abuse its discretion by allowing Ms. Baker to reelect her remedy.

The City asserts that, by allowing Ms. Baker to reelect her remedy (after her elected remedy was reversed on appeal), the district court abused its discretion. Specifically, it suggests that the district court

13

should have declined to exercise its supplemental jurisdiction over Ms. Baker's remaining Texas claim. City Br. 15–26. The City is mistaken.

To start, it is important to identify the precise legal issue over which the district court exercised supplemental jurisdiction. It was not whether the City is liable to Ms. Baker under the Texas Constitution. That issue was already decided when the district court granted summary judgment to Ms. Baker on her Texas constitutional claim, and the prior Fifth Circuit panel affirmed that the district court had properly exercised supplemental jurisdiction. *Baker v. City of McKinney*, 84 F.4th 378, 382 n.2 (5th Cir. 2023). The only issue left on remand— and the only issue requiring a further exercise of supplemental jurisdiction—was the essentially ministerial act of reentering judgment on the state claim. As the district court succinctly put it, "this case is on the goal line." *Baker v. City of McKinney*, No. 4:21-CV-176, 2025 WL 1592949, at *3 (E.D. Tex. June 5, 2025).

Under these circumstances, it would have been an abuse of discretion *not* to continue exercising supplemental jurisdiction. *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602

14

(5th Cir. 2009) (A court may not decline supplemental jurisdiction "after investing a significant amount of judicial resources in the litigation" of now-dismissed federal claims.). To be sure, courts may decline to exercise supplemental jurisdiction "when all federal-law claims are eliminated *before trial*," *Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) (emphasis added), but the City has not identified any case where courts declined to exercise jurisdiction *after* trial, much less after years of appellate litigation. *See Myers v. County of Lake*, 30 F.3d 847, 849 (7th Cir. 1994) ("One trial per case is enough."); 28 U.S.C. § 1367(c)(3) (the district court may decline supplemental jurisdiction when "*the district court* has dismissed all claims over which it has original jurisdiction" (emphasis added)). Here, Ms. Baker's federal claim was eliminated only on appeal—that is, after the district court (1) granted partial summary judgment on liability for Ms. Baker's federal and state claims, (2) held a jury trial to determine the quantum of damages for those claims, and (3) denied the City's post-trial motions. Under these circumstances, anything but continued exercise of supplemental jurisdiction would have been erroneous.

15

Regardless, the district court correctly observed that discretionary factors favor Ms. Baker. First, there is no "novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). The only issue is whether to reenter judgment pursuant to the Texas Constitution. This Court already held in *Malvino* that district courts must do so. 840 F.3d at 233.

Second, "the common-law factors of judicial economy, convenience, fairness, and comity also favor affirming the district court's discretionary decision." *Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008). As noted above, the district court had already adjudicated summary-judgment motions and held a final jury trial. It therefore had "substantial familiarity with the merits of the case, and it was reasonable to conclude that further proceedings in the district court would prevent redundancy and conserve scarce judicial resources." *Ibid.* (cleaned up). Hence, declining jurisdiction at this late stage would be both fundamentally unfair and grossly wasteful. It makes no sense to force Ms. Baker (now in her 80s) to go to trial yet again, with evidence stale and memories faded, particularly when there is no legal or factual reason to expect the result to be any different. Under these

16

circumstances, the district court's decision to retain jurisdiction cannot amount to abuse of discretion.

## II.    The district court correctly granted Ms. Baker summary judgment as to liability under the Texas Constitution.

In holding the City liable under the Texas Constitution, the district court relied on *Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980)—where claimants presented allegations materially indistinguishable from this case's record. The City asserts that *Steele* does not control here and that, regardless, *Steele*'s holding is somehow undermined by this Circuit's reversal of Ms. Baker's federal claim. City Br. 19–22, 31–34. The City is wrong on both counts.

### A.    *Steele* controls.

In *Steele*, "officers of the Houston Police Department caused the destruction of [an innocent person's] home and belongings while attempting to recapture three escaped convicts who had taken refuge in the house." *Steele*, 603 S.W.2d at 788. The Texas Supreme Court held that, even though the destruction was not "wrongfully ordered," the innocent owners nevertheless alleged facts entitling them to governmental compensation. *Id.* at 793. Specifically, Section 17, Article

I of the Texas Constitution requires compensation for property taken "for the public use," which includes property damaged in the course of capturing a third-party criminal suspect. *Id.* at 792. Although *Steele* left open the possibility that something like a "great public necessity" defense could excuse Houston's liability, the Court expressly found that the need "to apprehend armed and dangerous men who had taken refuge in the house," without more, was not enough to satisfy such a defense. *Ibid.*

*Steele* controls here. **Hours before the City of McKinney's officers executed the destructive assault on Ms. Baker's house, the hostage in this case had escaped the house and was safely within police custody**. City Br. 9–10 ("Mr. Little refused to leave the house, but released the 15-year-old girl. . . . Over the next several hours, the police attempted to coerce Mr. Little to leave the house by using tear gas and other forceful methods, without success. . . . As a result of the police operations, some damage to the [house] occurred."). Therefore, it is undisputed that the City's officers damaged Ms. Baker's house to "apprehend [an] armed and dangerous [man] who had taken

18

refuge in [the] house," just as the *Steele* plaintiffs alleged. *Steele*, <u>603 S.W.2d at 792</u>.

The City's efforts to distinguish *Steele* are meritless. First, it suggests that this case has a "consent issue" because Ms. Baker called the police to tell them that the fugitive they sought was at her house. City Br. 31.[4] This issue has been forfeited because the City never raised it below. *See First United Pentecostal Church v. Church Mut. Ins. Co.*, <u>119 F.4th 417, 426</u> (5th Cir. 2024) ("A party forfeits an argument by failing to raise it in the first instance in the district court[.]"). The City's brief opposing summary judgment mentioned "consent" only in passing, claiming that "further discovery" was necessary to address "the consent

---

[4] The City also states that Ms. Baker's "daughter consent[ed] to Mr. Little's entry into the residence and concealing the stolen Corvette automobile in Baker's garage." City Br. 31. However, Ms. Baker's daughter "consented" only under duress, given that Mr. Little was armed and described by news media as a dangerous fugitive—which explains why the two women immediately "called the McKinney police, who met [Ms. Baker's daughter] in a retail parking lot." City Br. 9.

issue."[5] ROA.25-40396.297. At no point did the City claim that—on this record—it had a viable "consent defense" to liability.

But even if the issue were not forfeited, it is nonsense to suggest that Ms. Baker, by calling the police to report the location of an abducted teenager, had consented to the destruction of her home without compensation therefor. *Carpenter v. Parmer County*, 51 S.W.2d 829, 830 (Tex. Civ. App. 1932) ("[C]onsent to an entry upon the land is not construed as an abandonment of the right to have compensation[.]"). Moreover, the City's preferred rule would perversely incentivize people against calling police in these situations—for fear that it will leave them literally homeless.

Second, the City asserts that *Steele* does not control because it "referenced the possibility of application of the necessity exception, leaving that issue for further factual development by the City of Houston upon remand." City Br. 22. True enough, *Steele* left open whether Houston could develop facts on remand that could possibly

---

[5] The City did not take discovery or move for summary judgment within the district court's deadlines, apparently assuming that it would prevail on its pending motion to dismiss.

20

satisfy a necessity defense. *See Steele*, 603 S.W.2d at 792. But *Steele* also makes clear that the mere fact that "armed and dangerous men" have barricaded themselves inside a house does not, by itself, establish a necessity defense. *Ibid.* And that is all the City can show, even after trial. Pursuant to the Texas Constitution, that need "does not establish as a matter of law that [the City] is excused from making compensation for the destruction of [Ms. Baker's] dwelling and personal property." *Ibid.* In fact, the Texas Supreme Court has stated more recently that any "great public necessity" exception to liability would apply only in cases of inevitable destruction, *i.e.*, when "the property is 'destined to destruction anyway.'" *Commons of Lake Houston, Ltd. v. City of Houston*, 711 S.W.3d 666, 680 n.39 (Tex. 2025) (quoting *Steele*, 603 S.W.2d at 792). There is no colorable argument that Ms. Baker's home would have been destroyed even absent governmental action.

In any event, "great public necessity" would be at most an affirmative defense—which the City forfeited by not pursuing it below. A "necessity defense is just what it says it is: a defense." *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013); *accord Steele*, 603 S.W.2d at 792 (Houston would need to "prove" any such defense).

21

Despite full knowledge of *Steele*, the City made no attempt below to raise or prove a necessity defense. The district court cannot have erred by not crediting a defense that the City never made.[6] *See Excel Modular Scaffold & Leasing Co. v. OSHA*, 943 F.3d 748, 755 (5th Cir. 2019) (defendant waived affirmative defense by not flagging it before trial).

The City suggests it need not have asserted a necessity defense below, for Ms. Baker supposedly conceded that "the McKinney Police Department's work was impeccable and necessary, and that there was no dispute about the police officers' professional and reasonable actions." City Br. 24. But although it is true that Ms. Baker has consistently agreed that the City's officers did not "wrongfully order[]" her property's destruction, that's a far cry from conceding a "public necessity" excusing compensation for the destruction.[7] *Steele*, 603

---

[6] Moreover, had the City raised a necessity defense, Ms. Baker would have litigated this case completely differently—by, *e.g.*, deposing individual officers; retaining an expert in police tactics; etc.

[7] For the notion that Ms. Baker conceded that the destruction of her property was "objectively necessary," the City cites only the previous panel opinion in this case. City Br. 24 (quoting *Baker*, 84 F.4th at 388). Respectfully, Ms. Baker has never made such a concession—which is why the City is unable to provide a record citation for it.

S.W.2d at 793. Indeed, Ms. Baker was merely acknowledging "[t]hat the destruction was done for the public use" of apprehending a dangerous fugitive, *i.e.*, that the City's police officers are not individually liable. *Id.* at 792. The City's position seems to be that there are only two kinds of destructive actions: Those that are wrongful and those that are undertaken pursuant to a "great public necessity" excusing compensation. *Steele* says otherwise—and that the public need to apprehend a dangerous fugitive is not equivalent to any "necessity" exception to just compensation.

### B.　*Steele* remains good law.

Unable to distinguish *Steele*, the City asserts that this Circuit's reversal of Ms. Baker's federal claim somehow undermines *Steele* (or its applicability to her state claim). City Br. 19–22, 32–34. The City is mistaken.

First of all, the prior panel *expressly* declined to offer any opinion regarding Ms. Baker's claim under the Texas Constitution. *Baker*, 84 F.4th at 388. The panel would surely be surprised to learn that, notwithstanding the clarity of its statement, its opinion nevertheless

implicitly overturned the Supreme Court of Texas on an issue of Texas law.

Second, Texas does not interpret its Takings Clause in lockstep with its federal counterpart. The Texas Supreme Court has repeatedly noted that the Texas Constitution "confers upon property owners greater rights of recovery against the government than its federal fifth amendment counterpart." *Palacios Seafood, Inc. v. Piling, Inc.*, 888 F.2d 1509, 1513 (5th Cir. 1989); *accord Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25 (Tex. 2024). Therefore, although the Texas Constitution's takings jurisprudence is "comparable" to federal law, it is not the same. *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 56 (Tex. 2006).

*Steele* grounded its holding in state law. The Texas Supreme Court traced the just compensation principle from Magna Carta, through the state constitutions of 1845, 1861, 1866, 1869, and 1876, noting that it was the latter that finally made explicit the promise of compensation for "damaging and destroying a citizen's property," and that the right to compensation did not depend "upon the transfer of property rights." *Steele*, 603 S.W.2d at 790. This Court's interpretation

24

of the Fifth Amendment simply has no bearing on the Texas Supreme Court's interpretation of the 1876 state constitution.

Moreover, the Texas Supreme Court has already had the opportunity to reconsider *Steele* in light of the prior panel opinion, yet it continues to cite *Steele* favorably (even while recognizing this Circuit's reversal of Ms. Baker's federal claim). *Self*, 690 S.W.3d at 27 n.16. Indeed, *Steele* has long provided the fundamental framework for inverse-condemnation actions based on the Texas Constitution. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2011) (discussing *Steele*).

In any event, *Steele* already rejected the notion that something like a "necessity" exception would excuse the City from its duty under the Texas Constitution to compensate people like Ms. Baker. Again, the bare notion that the City destroyed Ms. Baker's home "to apprehend [an] armed and dangerous [man] who had taken refuge in the house . . . does not establish as a matter of law that it is excused from making compensation for the destruction of [her] dwelling and personal property" based on a necessity defense. *Steele*, 603 S.W.2d at 792. *See*

*also supra* Pt. II(A). The City is therefore patently incorrect to suppose

that "*Steele* did not concern or address a necessity exception vis-à-vis

the Texas Constitution's takings clause in the context of police

operations[.]" City Br. 33.

## III. The district court did not plainly err by instructing the jury to quantify damages based on costs of repairing Ms. Baker's home.

Next, the City asserts that—for only Ms. Baker's state claim—the

district court should have stated that diminution of market value (and

not costs of repairing or replacing the property) is the proper

measurement of just compensation. City Br. 34–36. That assertion is

meritless.

As a preliminary matter, the City failed to request a separate jury

instruction regarding the proper measurement of just compensation

under Texas law. To be sure, the City raised some objections to the

district court's jury instructions. *See* City Br. 6. But it never objected to

the district court's instruction that the cost of repairing Ms. Baker's

home is an acceptable measurement for determining just compensation.

*Compare* ROA.25-40396.807 (court's jury instructions), *with* ROA.25-

40396.1423 (City's objections to those instructions), *and* ROA.25-40396.544 (City's proffered jury instruction on Texas Takings Clause).

Therefore, this Court's analysis of the district court's jury instruction is limited to plain-error review. *United States v. Capistrano*, 74 F.4th 756, 769 (5th Cir. 2023). "To establish plain error, one must show that: "(1) the district court erred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) this court should exercise its discretion to correct the error because the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Ibid.* (quotation marks omitted).

The City's argument fails at the outset because the district court did not err. The "general rule" that just compensation for a taking should be diminution of market value is just that: a "general rule." *Barshop v. City of Houston*, 442 S.W.2d 682, 685 (Tex. 1969). That rule can make sense in instances where government is formally exercising its condemnation authority in an eminent-domain proceeding. *See, e.g., ibid.* But it might not make sense in other cases. *See, e.g., City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 454 (Tex. 2010) (allowing

27

successful temporary-takings plaintiff to recover "expenses associated with maintenance *and repair* while awaiting building permits" (emphasis added)). Hence, the City provides no case involving physical injury to property where the Texas Supreme Court categorically rejected ever utilizing repair or replacement costs to quantify damages.

And even assuming *arguendo* that, under Texas law, the proper measurement of damages must inevitably be diminution of market value—Ms. Baker's testimony regarding her repair costs surely constitutes at least *some* evidence of her home's diminished market value. *See Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018) (new trial is warranted only if "there is an absolute absence of evidence to support the jury's verdict"). If anything, the City's preferred instruction would result in even greater damages owed to Ms. Baker, as any loss to her house's market value would necessarily include at the very least the cost of repairing it.

## IV.    The jury's verdict was supported by the evidence.

Finally, the City complains that *no* evidence supported the jury's award of $15,100.83 for the value of her destroyed personal property,

*i.e.,* the contents of the home, which were mostly destroyed by tear gas. City Br. 37. That is puzzling. As the City acknowledges, Ms. Baker testified at length about the "purchase cost of various personal property items that were [destroyed] as a result of the police officer[s'] actions." *Id.* at 35. She went through the home room-by-room, testifying to the best of her recollection as to the age, quality, and condition of various items. *Baker v. City of McKinney*, 624 F. Supp. 3d 653, 666 (E.D. Tex. 2022) (discussing Baker's testimony). The jury's award was a conservative estimate for a household full of furniture, appliances, clothing, and keepsakes.

It is well settled that "the owner of property is qualified by his ownership alone to testify as to its value." *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 433 (5th Cir. 1982). And "when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, [the plaintiff can] plac[e] before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282

29

U.S. 555, 564 (1931) (citation omitted). Particularly "in those cases where exact loss is unascertainable, a just and reasonable estimate of the damage based on relevant data may be made and the verdict rendered accordingly." *Daniels Towing Serv., Inc. v. Nat Harrison Assocs., Inc.*, 432 F.2d 103, 106 (5th Cir. 1970). That is exactly what happened here.

The City's position—that a reasonable jury could not have awarded Ms. Baker *anything* for the admitted destruction of a household full of property—defies both precedent and common sense. Ms. Baker did not expect to have the contents of her home destroyed while she was in another state, but she testified about it to the best of her ability. None of the items that she discussed were exotic or beyond the experience of the average juror. The City did not contradict her testimony in any way, and even now, it does not dispute that she suffered a significant loss.

## CONCLUSION

For the foregoing reasons, this Court should affirm the holdings below.

Dated: October 17, 2025                    Respectfully submitted,

                                           /s/ Suranjan M. Sen
                                           SURANJAN M. SEN
                                           JEFFREY REDFERN
                                           WILLIAM R. ARONIN
                                           ROBERT MCNAMARA
                                           INSTITUTE FOR JUSTICE
                                           *Attorneys for Plaintiff-Appellee*
                                           901 North Glebe Road, Suite 900
                                           Arlington, Virginia 22203
                                           (703) 682-9320
                                           ssen@ij.org
                                           jredfern@ij.org
                                           waronin@ij.org
                                           rmcnamara@ij.org

## CERTIFICATE OF SERVICE

The foregoing brief has been served via the Court's ECF filing system in compliance with <u>Federal Rules of Appellate Procedure 25(b)</u> and (c), on October 17, 2025, on all registered counsel of record and has been transmitted to the Clerk of the Court.

Dated:  October 17, 2025.

/s/ Suranjan M. Sen

*Attorney for Plaintiff-Appellee*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits of <u>Federal Rule of Appellate Procedure 32(a)(7)(B)</u> because it contains 5,851words, excluding the parts of the document exempted by <u>Federal Rule of Appellate Procedure 32(f)</u> and Fifth Circuit Rule 32.2.

2.      This brief document complies with the typeface and type style requirements of <u>Federal Rule of Appellate Procedure 32(a)(5)</u> and the type style requirements of <u>Federal Rule of Appellate Procedure 32(a)(6)</u> because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

Dated: October 17, 2025.

/s/ Suranjan M. Sen
*Attorney for Plaintiff-Appellee*